UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

TOMMY THORN                                                                   PLAINTIFF

V.                           NO. 3:16CV00208-JTR

NANCY A. BERRYHILL,[1]
**Acting Commissioner,**
**Social Security Administration**                                            DEFENDANT

## ORDER

I.  **Introduction:**

Plaintiff, Tommy Thorn, applied for disability benefits on March 22, 2014, alleging an onset date of January 1, 2013. (Tr. at 9). His claims were denied initially and upon reconsideration. *Id.* After conducting a hearing, the Administrative Law Judge ("ALJ") denied Thorn's application. (Tr. at 9-22). The Appeals Council denied his request for review. (Tr. at 1). Thus, the ALJ's decision now stands as the final decision of the Commissioner. Thorn has requested judicial review.

For the reasons stated below, the Court reverses the ALJ's decision and remands for further review.[2]

---

[1] Berryhill is now the Acting Commissioner of Social Security and is automatically substituted as Defendant pursuant to Fed. R. Civ. P. 25(d).

[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

## II. **The Commissioner's Decision:**

The ALJ found that Thorn had not engaged in substantial gainful activity since the alleged onset date of January 1, 2013. (Tr. at 11). At Step Two of the five-step analysis, the ALJ found that Thorn has the following severe impairments: degenerative disc disease of the cervical and lumbosacral spine, status post cervical spinal fusion, history of colon resection and hernia repair, and obesity. *Id.*

After finding that Thorn's impairments did not meet or equal a listed impairment (Tr. at 14), the ALJ determined that Thorn had the residual functional capacity ("RFC") to perform sedentary work with the following limitations: 1) he could perform only occasional climbing, stooping, crouching, kneeling, and crawling; 2) he could not work in unrestricted heights, such as ladders or scaffolding 3) in an eight-hour workday, he could sit six to eight hours, from one to two hours without interruption; and 4) he could stand and walk no more than two hours. (Tr. at 15). The ALJ relied on the testimony of a vocational expert to find that, based on Thorn's age, education, work experience and RFC, he could perform past relevant work as a quality-control inspector. (Tr. at 21). Based on that determination, the ALJ held that Thorn was not disabled. *Id.*

**III. Discussion:**

    A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

    B. Thorn's Arguments on Appeal

Thorn argues that substantial evidence does not support the ALJ's decision to deny benefits. He contends that the ALJ erred: (1) in relying on the opinion of Roger Troxel, M.D.; (2) in failing to include in the RFC a sitting and overhead reaching limitation; and (3) in his credibility analysis, which labeled Thorn's treatment as conservative. The Court concludes that, based on several errors committed by the ALJ, his decision was not supported by substantial evidence.

First, it appears the ALJ did not properly assess Thorn's repeatedly elevated blood pressure. The ALJ briefly reviewed the evidence related to high blood pressure, and concluded that the record did not establish that hypertension significantly limited Thorn's ability to perform basic work activities. The ALJ's review of the pertinent evidence relating to high blood pressure was incomplete.

On October 1, 2013, Thorn presented to East Arkansas Family Health Center, Inc., because his blood pressure medication was not working. (Tr. at 296). Thorn's blood pressure that day was 184/110. *Id.* He indicated that he had been keeping a daily log of his blood pressure and it was consistently higher than 160/80. *Id.* He reported headache and blurry vision, possible markers for high blood pressure. *Id.*

On October 8, 2013, Thorn reported high blood pressure in spite of taking double his dose of Benicar. (Tr. at 294). Home tests recorded regularly high blood pressure. *Id.* He was feeling flushed, with occasional heart palpitations. *Id.* The Advanced Practice Nurse, Amy Johnson, increased Benicar. *Id.*

On October 29, 2013, Thorn returned to the clinic with a log showing consistently "uncontrolled" blood pressure and fatigue, despite the increase in his Benicar. (Tr. at 292).

On December 3, 2013, Thorn's blood pressure was 185/100 and he had a constant headache. (Tr. at 289). Johnson recommended further testing by a

specialist. (Tr. at 290).

At a January 28, 2014 appointment, Thorn's blood pressure was 191/89, and he reported occasional headaches. (Tr. at 286). His face was flushed. *Id.*

On May 1, 2014, Maximiliano Arroyo, M.D., documented significant uncontrolled hypertension. (Tr. at 327). He noted that Thorn was still symptomatic in spite of multiple medications, dietary measures, an exercise regimen, and weight loss. *Id.*

On June 30, 2014, a clinic note reveals a hospital visit due to high blood pressure, which was "better but not optimal." (Tr. at 320). Dr. Arroyo recommended the strongest medicine in each class for high blood pressure. *Id.*

The ALJ erred in dismissing high blood pressure as a non-severe impairment. The claimant has the burden of proving that an impairment is severe, which by definition significantly limits one or more basic work activities. *Gonzales v. Barnhart*, 456 F.3d 890, 894 (8th Cir. 2006). A physical or mental impairment must last or be expected to last not less than 12 months. *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006).

Thorn suffered from high blood pressure in spite of compliance with medications and daily monitoring of his condition. His blood pressure was labeled as "uncontrolled" and required hospitalization. He was referred to a specialist. His

condition did not improve over time. Because the ALJ need not apply the standard rigorous review of evidence for non-severe impairments, erroneously labeling a severe impairment as non-severe almost always results in prejudice to the claimant. In this case, high blood pressure remained a consistent problem for Thorn, and the ALJ should have given it more consideration.

In discussing the weight given to the opinion of Dr. Troxel, who examined Thorn at the request of the Commissioner, Thorn says that Dr. Troxel's report is inconsistent with the objective medical evidence. Thorn avers that, by relying solely upon Dr. Troxel's opinion , the ALJ made a flawed RFC determination. He states that significant back and shoulder pain should have further limited sitting and reaching in the RFC.

Thorn had cervical fusion surgery in 2002. (Tr. at 33). On July 11, 2014, he complained of ripping pain in his shoulders and neck. (Tr. at 342). On August 11, 2014, he had worse pain in his shoulder, exacerbated by lifting. (Tr. at 339). Thorn underwent physical therapy throughout July, August, and September 2014, but his pain was worse after his sessions. (Tr. at 336). On September 12, 2014, Dr. Tuetken diagnosed back pain, bilateral shoulder pain, and neck pain. (Tr. at 338).

On September 19, 2014, a cervical MRI revealed moderate degenerative changes at C4-5, narrowing of the C3-4 canal with mild flattening of the spinal cord,

and foraminal stenosis bilaterally. (Tr. at 348). A lumbar MRI revealed herniated nucleus pulposus ("HNP") at L4-5 indenting the thecal sac and mildly contacting the L5 nerve roots. (Tr. at 350). At L5-S1 there was also HNP with slight flattening of the thecal sac and nerve roots, with associated facet disease. *Id.* The same condition was seen at L2-3. *Id.*

On November 26, 2014, Thorn was seen by John A. Campbell, M.D., a neurosurgeon. (Tr. at 410-11). Dr. Campbell noted poor ROM in the cervical spine. (Tr. at 411). He did not recommend surgery but suggested that Thorn see a pain specialist. *Id.*

On December 11, 2014, Thorn visited Comprehensive Pain Specialists. Physical exam revealed decreased and painful ROM in the cervical and lumbar spine. (Tr. at 432-34). Thorn complained of pain radiating to his hips and legs. (Tr. at 431). He said heat and a TENS unit seemed to help. *Id.* Thorn was scheduled for a cervical spine injection and continued on Tramadol and Flexeril. (Tr. at 433). Jeffrey Hall, M.D., a pain specialist, administered a cervical branch block on December 18, 2014, and an additional cervical facet steroid injection on February 9, 2015. (Tr. at 425-27).

On February 23, 2015, Thorn was again treated by Dr. Hall. He reported 75% improvement, but still had pain in his neck, lower back, hips, and legs. (Tr. at 421).

He had painful ROM in the cervical and lumbar spine with diffuse muscle tenderness. Dr. Hall diagnosed failed back syndrome of the cervical spine, lumbosacral spondylosis without myelopathy, sacroiliac pain, and myalgia and myositis. (Tr. at 422).

On April 27, 2015 and May 11, 2015, Dr. Hall performed cervical radiofrequency ablation on the cervical spine. (Tr. at 454-56). Thorn continued on Tramadol. *Id.*

As for Thorn's shoulders, MRIs on June 23, 2015 revealed rotator cuff tears in both shoulders. (Tr. at 459-62). On July 21, 2015, Thorn reported shoulder pain that was worse with activities performed over his head. (Tr. at 465). Two non-examining reviewing physicians found, in June and July 2014, that Thorn would be limited in overhead reaching. (Tr. at 62, 76).

On May 14, 2014, Dr. Troxel examined Thorn and found a moderately reduced ability to walk, stand, lift and carry. (Tr. at 307). He found no decrease in Thorn's ability to sit, handle, finger, see, hear, or speak. *Id.* This was in spite of decreased ROM in Thorn's shoulders, knees, and cervical and lumbar spine. (Tr. at 305). Thorn argues that Dr. Troxel's report was not reflective of his condition.

Indeed, the ALJ relied significantly upon Dr. Troxel's report as opposed to the opinions of the non-examining medical consultants. While an ALJ may resolve

conflicts among the various treating and examining physicians, a medical opinion does not control in the face of other credible evidence in the record that detracts from that opinion. *Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010); *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). Additionally, "[p]hysician opinions that are internally inconsistent . . . are entitled to less deference than they would receive in the absence of inconsistencies." *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005). Dr. Troxel's opinion was internally inconsistent; he noted decreased range of motion in several areas, which does not correlate to his finding of "no or only minimal limitations."

The ALJ dismissed the non-examining medical consultant opinions because "due to the timing of their opinions, they did not have the opportunity to review a significant number of later medical records." (Tr. at 20). Indeed, **all** of the state consultants, including Dr. Troxel, did not have the benefit of reviewing the MRIs of Thorn's back, neck and shoulders. Dr. Troxel's exam was a month prior to either non-examining consultant's exam. If the ALJ threw out the non-examining consultant opinions because they did not have the later records, he should have likewise thrown out Dr. Troxel's opinion. Instead, he cherry-picked the medical evidence to support his RFC, when there was conflict among the doctors, particularly with respect to overhead reaching.

The non-examining consultants both found a limitation in overhead reaching, even before the later diagnosis of rotator cuff tears. The RFC would have been more limiting had the ALJ given appropriate weight to all of the state consultant opinions. At the very least, because of the abundant medical records detailing later diagnoses and considerable treatment, the ALJ should have ordered a follow-up consultative exam. The ALJ has a duty to develop the record fully, even when the claimant is represented by counsel, and must order a consultative examination if it is necessary to make an informed decision. *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985). Thorn's examinations revealed deteriorating conditions after the state consultants issued their reports. The ALJ should have further developed the record in light of the new evidence, because the new evidence points to a more limited RFC than that assigned by the ALJ.

**IV. Conclusion:**

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. For the reasons stated above, the

Court concludes that the ALJ's decision is not supported by substantial evidence. The ALJ did not properly consider Thorn's high blood pressure, did not give proper weight to the physician's opinions, and did not further develop the record where necessary.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is REVERSED and the case is REMANDED for further review.

DATED this 6th day of June, 2017.

_____
UNITED STATES MAGISTRATE JUDGE